UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**UNITED STATES OF AMERICA**

    v.                                              5:02-CR-51 (HGM)

**ALEXANDER SALVAGNO, RAUL SALVAGNO,
and AAR CONTRACTOR, INC.,**

        Defendants.
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE UNITED STATES:** | |
| HON. GLENN T. SUDDABY | CRAIG A. BENEDICT |
| United States Attorney | Assistant United States Attorney |
| Northern District of New York | |
| P.O. Box 7198 | |
| 100 South Clinton Street | |
| Syracuse, New York 13261-7198 | |
| **FOR DEFENDANTS:** | |
| LITMAN, ASCHE & GIOIELLA, LLP | RICHARD M. ASCHE, ESQ. |
| 45 Broadway Atrium | RUSSELL M. GIOIELLA, ESQ. |
| New York, New York 10006 | |

**HOWARD G. MUNSON**
**Senior United States District Judge**

## ORDER

On December 23, 2004, the court sentenced defendants Alexander Salvagno, Raul Salvagno and AAR Contractor. The Government and defendants appealed the court's sentence to the Second Circuit. Less than a month later, the United States Supreme Court issued its opinions in United States v. Booker, --- U.S. ---, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) ("Booker/Fanfan"), which "significantly altered the sentencing regime" that had existed since the Sentencing Reform Act of 1984 ("SRA") became effective on November 1, 1987. United States v. Crosby, 397 F.3d 103, 108

(2d Cir. 2005). The Court delivered two opinions in Booker/Fanfan–one substantive, which explained the Sixth Amendment's requirements in the context of sentencing, and one remedial. In its substantive opinion, the Court ruled that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker/Fanfan, ---U.S---, 125 S.Ct. at 756. The Court found that the determinate sentencing scheme mandated by the SRA ran afoul of its ruling. In its remedial opinion, the Court ruled that the implementation of the substantive opinion required the severance and excision of two SRA provisions: 18 U.S.C. § 3553(b)(1), which mandates use of the Guidelines, and § 3742(e), which "sets forth standards of review on appeal." Booker/Fanfan, ---U.S. ---, 125 S.Ct. at 764. The Court, having severed and excised the SRA's standards governing review of sentences, replaced them with "a practical standard of review already familiar to appellate courts: review for 'unreasonable [ness].'" Id. at 765.

The Second Circuit acted swiftly to digest Booker/Fanfan and issued Crosby, noting that while it would be inappropriate to even try to anticipate a host of new issues born in the aftermath of Booker/Fanfan, they hoped that their explanation would benefit the bench and bar alike. Crosby, 397 F.3d at 107. In Crosby, the Second Circuit noted that aside from its excised provisions, the SRA otherwise remained intact. Thus, although sentencing courts are no longer obligated to apply the Guidelines, they remain under a continuing duty to consider them in their advisory capacity and in conjunction with those other factors listed in 18 U.S.C. § 3553(a). Id. at 111. The Second Circuit also explained that "consideration of the Guidelines would normally require determination of the applicable Guidelines range, or at least identification of the arguably applicable ranges, and consideration of applicable policy statements." Id. at 113. After having considered the Guidelines and all other factors set forth in 18 U.S.C. § 3553(a), the sentencing judge should decide whether

to impose: (1) "the sentence that would have been imposed under the Guidelines, *i.e.*, a sentence within the applicable Guidelines range or within permissible departure authority, or . . . (2) a non-Guidelines sentence." Crosby, 397 F.3d at 113. In addition, the "sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence." Id.

Later in the Crosby opinion, the Second Circuit addressed appeals of sentences imposed before the Court issued its opinions in Booker/Fanfan and observed, *inter alia*, that "even if a judge, prior to Booker/Fanfan, indicated an alternative sentence that would have been imposed if compliance with the Guidelines were not required, that alternative sentence is not necessarily the same one that the judge would have imposed in compliance with the duty to consider all of the factors listed in section 3553(a)." Id. at 118. The Second Circuit concluded that sentences imposed prior to Booker/Fanfan were "imposed without an understanding of sentencing law as subsequently explained by the Supreme Court." Id. However, rather than guess as to whether a correct perception of the law in the wake of Booker/Fanfan would have resulted in a different sentence, the Second Circuit has opted to remand such cases to the district court so that it can determine whether it would have imposed a nontrivially different sentence. Id. In fact, the district court need not even determine what the sentence would have been, but rather, only that it would have been nontrivially different. Id. at n.20. Thus, a remand under Crosby requires the district court to consider, "based upon the circumstances at the time of the original sentence, *whether* to resentence, after considering the currently applicable statutory requirements as explicated in Booker/Fanfan." Id. at 120. The district court "should obtain the views of counsel, at least in writing, but 'need not' require the presence of the Defendant (citation omitted). Upon reaching its decision (with or without a hearing) whether to resentence, the District Court should either place on the record a decision not to resentence, with an appropriate explanation, or vacate the sentence and, with the Defendant present,

3

resentence in conformity with the SRA, Booker/Fanfan, [and Crosby], including an appropriate explanation." Crosby, 397 F.3d at 120.

As noted above, both parties appealed the court's sentence, and the Government moved to remand the case to determine whether to resentence defendants. Citing Booker/Fanfan and Crosby, the Second Circuit granted the Government's motion to remand and directed the court to proceed "in conformity with Crosby." The Second Circuit's opinion issued as mandate on May 25, 2005, and was filed with the court on June 2, 2005. Previously, defense counsel had submitted a letter dated May 26, 2005, which noted that defendants had preserved their Booker/Fanfan objections[1] and therefore requested that the court resentence defendants in accordance with United States v. Fagans, 406 F.3d 138 (2d Cir. 2005). The Government soon joined in defense counsel's request concluding in a letter dated May 31, 2005, that Fagans required the court to resentence defendants.

In Fagans, the defendant pled guilty, pursuant to a plea agreement, to possessing a stolen firearm, in violation of 18 U.S.C. § 922(j). The Presentence Report ("PSR") assigned the defendant a total offense level of 13 and a Criminal History Category of IV, yielding a Guidelines range of 24-30 months' imprisonment. Prior to sentencing, the defendant submitted a sentencing memorandum objecting to the PSR's recommended sentence. The defendant argued that the Court's decision in Blakely v. Washington, -- U.S. --, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), rendered application of the Guidelines unconstitutional. At sentencing, the defendant renewed his Blakely objections but was sentenced in accordance with the Guidelines. In addressing the defendant's appeal, the Second Circuit explained that Booker/Fanfan applies only to cases pending on direct review and that because the defendant had "objected, prior to sentencing, to the compulsory application of the Guidelines, he ha[d] preserved the error." Fagans, 406 F.2d at 140-41. On those facts, the Second

---

[1] Of course at the time of sentencing, defendants' objection to their sentences was based upon Blakely.

Circuit determined that the procedure set forth in Crosby for applying plain-error analysis was inapplicable. As a result of the preserved error, the Second Circuit remanded the case and directed the district court to vacate the sentence and resentence in conformity with their opinion and Booker/Fanfan. Id. at 142.

Given the similar procedural histories of Fagans and the instant case, *i.e.*, the defendants preserved their Blakely objections prior to the imposition of sentence and prior to the Court's decision in Booker/Fanfan, and given the Second Circuit's analysis in Fagans, the court understands the parties' request to proceed in accordance therewith. The court, however, finds the chronological order in which the Second Circuit issued Crosby, Fagans, and the mandate issued in this case most instructive.

The Second Circuit decided Crosby on February 2, 2005, and they decided Fagans on April 27, 2005. Here, the Second Circuit issued its mandate on May 25, 2005, in which it "remanded [the case] . . . for further proceedings in conformity with Crosby" while making no reference to Fagans. Given that chronology, as it stands, it is clear that if the Second Circuit had wanted this court to resentence defendants in accordance with Fagans, they would have so directed because they decided Fagans nearly a month before issuing the mandate here. To adopt the approach suggested by the parties and resentence in accordance with Fagans would be to ignore the mandate's clear directive, which the court can only assume was carefully considered and purposeful. Therefore, the court will proceed in conformity with Crosby.

## CONCLUSION

The court hereby **ORDERS** the parties' counsel to submit their views in writing as to

whether the court should resentence defendants in light of the currently applicable statutory requirements as explicated in <u>Booker/Fanfan</u> and <u>Crosby</u> by Friday, August 12, 2005.

**IT IS SO ORDERED.**

Dated: July 6, 2005
Syracuse, New York

*/s/ Howard G. Munson*
Howard G. Munson
Senior U.S. District Judge